**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLYDEN A. DAVIS<br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>JOSEPH J. MAGNOLIA, INC.<br>　　　　　　　　　Defendant**.** | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:08-CV00290 -<br>)  EGS<br>)<br>)<br>)<br>) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO THE FEDERAL ARBITRATION ACT, AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff, Mr. Blyden Davis ("Davis"), by and through his undersigned counsel, files this Opposition to Defendant Joseph J. Moagnolia, Inc.'s Motion to Dismiss the Complaint Pursuant to the Federal Arbitration Act as follows:

### I.  PLAINTIFF'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

1.　　Plaintiff Blyden Davis was hired as an equipment operator by Defendant in approximately March 2005. Pl's *Exhibit 1*.

2.　　Mr. Davis filed a hostile work environment based on race and retaliation claim with the D.C. Office of Human Rights on or about January 6, 2006. *Id.*

3.　　On or about April 20, 2006, Mr. Davis was directed to the human resources trailer on his jobsite, where Defendant's human resources representative greeted him. *Id.*

1

4.    The human resources representative informed Mr. Davis that she had his paycheck in her possession, but that she would not give him his paycheck until and unless he immediately executed a document acknowledging his receipt of a new employee manual. *Id.*

5.    Because he relied upon his paycheck, Mr. Davis complied and executed the document put in front of him by the Magnolia representative. *Id.*

6.    The above-referenced document included the obligation to arbitrate on which the Defendant's present motion is premised.

7.    Mr. Davis' employment was terminated on or about May 3, 2006. *Id.*

## II. ARGUMENT SUMMARY

Defendant has argued in its Motion that Mr. Davis executed a document on April 20, 2006 entitled, "Receipt and Acknowledgement of The Magnolia Companies Employment Benefits and Guidelines Manual" (Def's Exhibit 1). Defendant further argues that Mr. Davis' execution of that document constitutes an agreement to bring any employment disputes before an arbitrator pursuant to the Magnolia Employee Manual's "Arbitration Policy" (Def's Exhibit 2). Defendant cites several cases in support of its position that arbitration agreements extend to discrimination and retaliation claims under the D.C. Human Rights Act and Title VII of the Civil Rights Act of 1964, including, *inter alia, Cole v. Burns*

*Int'l Security Srvcs.*, 105 F.3d 1465 (D.C. Cir. 1997) and *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77 (D.C. Cir. 2005) ("Booker II").

Although Plaintiff acknowledges that employment disputes under certain conditions may be subject to mandatory arbitration agreements, such as those discussed in *Cole*[1] and *Booker II*, the arbitration provision referenced by Defendant in its Motion is unenforceable.[2] Therefore, notwithstanding Defendant's assertion on page 4 of its Memorandum of Points and Authorities in Support of its Motion, it is *not* "undisputed that Plaintiff agreed to arbitrate all the claims in this case."

First, Mr. Davis does not recall, and therefore denies, executing the arbitration agreement found at Defendant's Exhibit 1 ("Acknowledgement"). Indeed, both of Defendant's exhibits are suspect and ought not be considered by this Court for, among other reasons, the fact that the documents are not properly authenticated. Second, assuming *arguendo* that Mr. Davis signed the Acknowledgement, he did so under duress. Third, the Acknowledgement, if it was executed, was executed on or about April 20, 2006, *only two weeks before Mr. Davis was terminated*; and the Acknowledgement indicates that the polices in the Employee Manual are subject to change at the sole discretion of Magnolia at any

---

[1] Note, however, that *Bailey v. Federal Nat. Morg. Ass'n*, 209 F.3d 740, 741 (D.C. Cir. 2000) states that, "There is a serious question under *Cole* whether an employer may impose a condition of employment requiring a *current employee* to use arbitration before seeking to litigate statutory employment discrimination claims for no consideration save the employee's continued employment." (emphasis in original).

[2] Although Plaintiff does not concede this point for, among other reasons, Defendant relies on D.C. Code Ann § 164301 as its primary authority that disputes between employers and employees may be subject to mandatory arbitration; that Code provision, however, appears to have been repealed.

time. Other sections of the employee manual appear to contain similar language that demonstrates its non-binding nature with respect to the employer. As such, the agreement, if there is any agreement, lacks sufficient consideration and mutuality of obligation.

### III. APPLICABLE LAW

**<u>The Defendant's Motion Should Be Treated As One For Summary Judgment</u>**

As this court ruled in *Hughes v. CACI, Inc.-Commercial*, 384 F. Supp.2d 89, 99-100 (D.D.C. 2005), the Defendant's Motion should be treated as a Motion for Summary Judgment. In *Hughes*, as in the instant case, the Defendant provided the Court with documents that were not attached to the complaint, including the defendant's ADR policy and declarations. Moreover, the *Hughes* court stated that, "[a]lthough styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)." (citations omitted). Similarly, *The George Town Club at Suter's Tavern* v. *Salamanca*, 2007 WL 1041657 (D.D.C. 2007) (EGS) held that when, as here, "the party opposing arbitration contends that no agreement to arbitrate was entered, the Court decides the issue using the standards for resolving a summary judgment motion pursuant to Federal Rule of Civil Procedure 56." (*citing Stromberg Sheet Metal Workers, Inc. v. Washington Gas Energy Sys., Inc.*, 448 F. Supp.2d 64, 67 (D.D.C. 2006)). *See also*, *Toledano v. O'Connor*, 501 F. Supp.2d 127, 137 (D.D.C. 2007); *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp.2d 143, 147 (D.D.C. 2002).

**Summary Judgment Standard**

Under the summary judgment standard applicable to this Court, the Defendant is burdened with demonstrating that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). This Court must decide a summary judgment motion in the light most favorable to the Plaintiff in this case, and must draw all reasonable inferences in Plaintiff's favor. "A district court may grant summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Waterhouse v. District of Columbia*, 298 F.3d 989 (D.C. Cir. 2002) (internal citations omitted). In determining whether summary judgment is appropriate, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must decide, "not whether [it] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the nonmoving party on the evidence presented." *Id.* at 252. In ruling on a summary judgment motion, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

In its Motion, the Defendant has utterly failed to present any evidence that would demonstrate that no genuine dispute exists as to: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

Because this Motion is to be treated under the same standards as a Rule 56(c) motion for summary judgment, Local Rules 7(h) and 56.1 of this Court require the moving party to submit a "statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  In this case, the Defendants have failed to comply with this rule.  As such, they had not provided the Court with any justification that – pursuant to Rule 56(c) – they are entitled to judgment on the issue of arbitration as a matter of law.

"In determining the undisputed facts that exist in a case for the purposes of reviewing a motion for summary judgment, this Court *strictly* adheres to the text of Local Civil Rule 56.1." *Gibson v. Office of the Architect of the Capitol*, 2002 U.S. Dist. LEXIS 27602, at *1 (D.D.C. November 19, 2002) (*emphasis in original*).  Defendant's failure to include a set of material facts as to which there is no genuine issue therefore on its own calls for an outright denial and dismissal of its motion.  See *Argueta v. Government of the District of Columbia*, 355 F. Supp.2d 408, (D.D.C. 2005) (dismissing defendant's motion for summary judgment for failure to submit a statement of material facts not in dispute).

**Documents Supporting a Motion for Summary Judgment Must Be Admissible**

Rule 56 (2008) requires that a party may not rely on its own pleadings to support its summary judgment motion. To be considered on summary judgment, documents must be authenticated and admissible. As the documents attached to Defendant's Motion are not self-authenticating under Fed. R. Evid. 902, Defendant must have satisfied the authentication requirement. *See Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005), *cert. denied*, 546 U.S. 1066 (2005); *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000).

**Standard Regarding Motions To Enforce Arbitration Provisions**

In evaluating a motion to enforce an arbitration provision, the first step is to determine whether the parties did indeed agree to arbitrate their disputes. To do so, the Court must consider first whether there is a valid agreement to arbitrate between the parties and second whether the dispute in question falls within the scope of that arbitration agreement. *See Nur v. K.F.C. USA, Inc.*, 142 F. Supp.2d 48, 50-51 (D.D.C. 2001); *Fleetwood*, 280 F.3d at 1073 (5th Cir. 2002).

Whether an agreement to arbitrate exists is left to principles of state contract law. *See First Options v. Kaplan*, 514 U.S. 938, 943 (1995). Courts are not permitted to force arbitration unless the parties have agreed to arbitrate. *AT&T Techs, Inc. v. Communications Workers*, 475 U.S. 643, 648-49 (1986). "It is well settled...that 'a gateway dispute about whether the parties are bound by a given

arbitration clause raises a 'question of arbitrability' for a court to decide' based on state contract law." *Sapiro v. Verisign*, 310 F. Supp.2d 208, 212 (D.D.C. 2004) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)). "District of Columbia contract law has stated that 'the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of the contract between the parties.'" *Id.* (citing *Bailey v. Federal Nat. Morg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000)).

Although *Fleetwood* indicates that the Federal Arbitration Act ("FAA") favors arbitration, this federal policy to "favor" arbitration does <u>not</u> apply to the determination of whether there exists a valid agreement to arbitration between the parties in the first place. *See Volt Info. Scis. V. Bd. Of Trs.*, 489 U.S. 468 (1989), *EEOC v. Waffle House*, 534 U.S. 279 (2002). "Moreover, agreements to arbitrate under the FAA are subject to avoidance upon such grounds as exist at law or in equity for the revocation of any contract." *United States v. Stein*, 452 F.Supp.2d 230, 248-49 (S.D.N.Y. 2006) (internal citations and footnotes omitted).

## IV. ARGUMENT

The purpose of the FAA is the enforcement of contracts properly entered into between parties, and not for the efficient resolution of claims or for reasons of judicial economy. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T, 475 U.S. at 648.

**If Mr. Davis Signed the Acknowledgement, He Did So Without Assent and Under Duress**

State law, whether case law or statutory, can invalidate a purported agreement to arbitrate as long as the relevant state law "arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996). "Thus, arbitration agreements can be rendered unenforceable on the basis of generally applicable contract defenses, such as fraud, duress, or unconscionability.." *Id.* at 686 (internal quotations and citations omitted).

The law in the District of Columbia requires a meeting of the minds as to all material contract terms in order for a contract to be enforceable. *Bailey*, 209 F.3d at 746. "[A]n enforceable contract does not exist unless there has been a 'meeting of the minds' as to all material terms…With respect to proof of intent, the D.C. Court of Appeals has held that 'the parties' intention to be bound must be 'closely' examined." *Bailey*, 209 F.3d at 746 (internal citations omitted).[3]

---

[3] It should be noted that Mr. Davis' D.C. Office of Human Rights case was pending at the time the Defendant required him to sign the Acknowledgement. The timing of Mr. Davis' termination – under a week before the mediation in Mr. Davis' Office of Human Rights case – and within approximately two weeks of the requirement that the Acknowledgment be executed and the new arbitration policy was apparently included in Defendant's revised employee manual – is suspect. Indeed, the *Bailey* court and the District Court below noted that the employee in that case made a timely election against arbitration when he filed his complaint before an arbitration policy took effect, which the District Court determined signaled the employee's intention to reject arbitration. As such, the District Court held that the employer in that case was put on notice that the employee rejected arbitration. *See Id.* at 745. *It appears that it would be at least inequitable if not contrary to precedent to force arbitration on an employee who <u>already asserted</u> his claim, by formally filing a discrimination complaint against his employer, as is the case here.*

Although one's signature typically suggests that a party is bound, a party is not bound when he can demonstrate special circumstances relieving him of such an obligation." *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp.2d 94, 100 (D.D.C. 2004) ("Booker I"); *see also, Emeronye v. CACI Int'l, Inc.*, 141 F.Supp.2d 82, 86 (D.D.C. 2001).

Such special circumstances exist here. Assuming *arguendo* that Mr. Davis was presented with both pages of the Acknowledgment and that he signed it, then the fact that he was required to execute it <u>in order to be paid for work he had already performed</u>, constitutes "special circumstances" as contemplated by *Booker I.* An employee should only be bound when he is afforded the opportunity to read the document that is to bind him. *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965); *see also Nur*, 142 F. Supp.2d at 51 (holding that the court must find the agreement valid and enforceable, and that special circumstances could negate a party's assent). [4]

Magnolia exploited its power to Mr. Davis' detriment by forcing upon him terms that he was given no time to review, and no choice but to sign *in order to be paid for work he had already performed and for which he was already entitled payment*. In so doing, Magnolia prevented Mr. Davis from having, "[a] reasonable opportunity to understand the terms" (*Williams*, 350 F.2d at 449) of what he was forced to immediately sign, while standing at the end of the day waiting for his paycheck.

---

[4] *See also Lok Tio v. Washington Hosp. Center*, 2004 WL 2663149 (D.D.C. 2004) (indicating that an employee's ability to have a meaningful choice with respect to signing an arbitration agreement and an opportunity to review it is relevant in the analysis as to the enforceability of an arbitration provision.

17A Am. Jur. 2d Contracts § 218 provides important guidance on the elements of duress and coercion as applied to contracts, and states, in relevant part:

> The central question with respect to whether a contract was executed under duress is whether, considering all the surrounding circumstances, one party to the transaction was prevented from exercising his free will by threats or the wrongful conduct of another. A party claiming "duress" can prevail if he or she shows that he or she has been the victim of a wrongful or unlawful act or threat of a kind that deprives the victim of unfettered will, with the result that he or she was compelled to make a disproportionate exchange of values. Alternatively, a party can prevail by showing that he or she involuntarily accepted the terms of another, that the circumstances permitted *no other alternative*, and that the circumstances were the result of the coercive acts of the opposite party.

(emphasis added). If the parties did enter into an otherwise enforceable arbitration agreement, which we do not concede, then the "contract" is nonetheless void because each of the above listed elements is met in the case at bar: the Defendant unlawfully deprived Mr. Davis of his free will because it required him to sign the agreement in order to receive pay that he needed and had already earned.

Unlike in *Nelson*, *supra*, this case involves much more than the employee's attorney's speculation concerning the possibility that his client might be able to demonstrate duress. *See Nelson*, 215 F.Supp.2d at 151. Instead, in the instant case, Mr. Davis cites the detailed, specific circumstances surrounding the presentation of a revised employee handbook and a document to execute acknowledging the same wherein he was informed, contrary to District of Columbia law, that he must either sign the document or lose the pay to which he was entitled. *See, e.g., Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir.

2002); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002) (agreement to arbitrate held invalid because employee had only fifteen minutes to review a lengthy document, and the employer indicated that those who did not sign the agreement would not be promoted).

**Magnolia's Promises Were Illusory, And Any Agreement To Arbitrate Is Therefore Unenforceable**

The Acknowledgement that Magnolia argues Mr. Davis executed (Def's Exhibit 1) reads, in relevant part:

> I have received and read a copy of the Magnolia Companies Employment Benefits and Guidelines Manual. I understand that *the policies and benefits described in it are **subject to change at the sole discretion of Magnolia at any time.***

(emphasis added). Therefore, by its own language in the very document by which Defendant argues Plaintiff is bound, the Defendant may escape all obligations by simply modifying the employee manual – including necessarily the arbitration provisions contained at Def's Exhibit 2 – is unenforceable both for lack of consideration and because any promises made by Magnolia are illusory. *Lance v. United Mine Workers of America 1974 Pension Trust*, 355 F. Supp.2d 358, 361 (D.D.C. 2005); *see, e.g., Phox v. Atriums Management Co., Inc.*, 230 F. Supp.2d 1279 (D. Kan. 2002); *Heurtebise v. Reliable Business Computers*; *Cheek v. United Healthcare of Mid-Atlantic, Inc,*. 378 Md. 139, 835 A.2d 656 (Md. 2003); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) (holding that one party's reservation of rights to unilaterally and at its sole discretion modify the terms of an agreement makes the promise illusory, and the agreement therefore unenforceable) (*vacated on other grounds*).

In *Diaz v. Arapahoe (Burt) Ford, Inc.*, 68 F. Supp.2d 1193, 1194 (D. Colo. 1999), the court refused to grant the employer's motion to dismiss Plaintiff's discrimination claims and rejected the defendant's argument that the parties had entered into a binding agreement to arbitrate. The *Diaz* court noted that the employee handbook at issue in that case provided that, "nothing other than the arbitration provision is legally enforceable." *Id.* To be sure, the employee manual at issue in this litigation has similar language that permits Magnolia to modify the employee manual whenever it wants to, without notice. Further, the Acknowledgement states that neither party "has entered into a contract regarding any of the terms or duration of [Mr. Davis'] employment, except for the arbitration policy set forth in the employee handbook." *Def's Exhibit 1.* As the *Diaz* judge opined in denying the employer's motion to dismiss, "[w]hile an employer may wish the power to select which representations in its manual an employee's 'acknowledgment and receipt' will make binding, I will neither confer such power nor give it the imprimatur of this court." *Id. See also Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (holding that employer's reservation of rights to modify arbitration provisions renders any agreement to arbitrate unenforceable).

"Including the disclaimer [that the document is not a binding agreement and that BE & K reserves the right to modify it] suggests that Defendant's implied promise was merely illusory." *Snow v. BE&K Const. Co.*, 126 F.Supp.2d 5, 14 (D. Me. 2001) (*citing Restatement (Second) of Contracts* §§ 2 ct. e, 77 & cmt. A (1981). Joseph M. Perillo & Helen Hadjiyannakis Bender, 2 *Corbin on Contracts*

§ 5.28 (1995) (*some citations omitted*). *See also Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1128-32 (7th Cir. 1997) (employee should not be bound by employee handbook clause if the handbook states it is not a contract and employer may modify its terms at any time); *Smith v. Chrysler Fin. Corp.*, 101 F. Supp.2d 534, 538-39 (E.D. Mich. 2000).

As Mr. Davis is not in possession of the revised employee manual of which Def's Exhibit 2 appears to be a part,[5] Plaintiff is without knowledge concerning additional contradictory or other language, such as additional language advising employees that the employee manual is not a binding contract, for example. As such, the Plaintiff cannot, without access to discovery to determine all terms of the employee manual, including any terms that may affect the applicability of the arbitration agreement to the claims in litigation before the court, fully argue this issue here. *See Affidavit of T. Cary Devorsetz, attached hereto as Pl's Exhibit 2.*

Another provision of the employee manual states, in relevant part, that, "[t]he statements and language in this Employee Handbook **are not intended to create or comprise a contract** between the company and any of its employees." *Pl's Exhibit 2* (emphasis added). Therefore, by its own terms, the employee handbook is not an enforceable contract. *See Diaz, supra.* "Any bargain to waive the right to a judicial forum for civil rights claims, including those covered by the ADA, in exchange for employment or continued employment must at the least be

---

[5] The employee manual excerpt attached to Defendant's Motion has not been authenticated and is therefore not admissible evidence of the arbitration agreement. *See Rule 56(f)*. As such, the Defendant has not supported its argument that an arbitration agreement even exists.

express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997).

The First Circuit has ruled that a disclaimer clause such as the one(s) in the employee manual at issue in this case would make a handbook's mandatory arbitration provisions unenforceable. *Ramirez-De-Arellano v. Am.* Airlines, 133 F.3d 89, 90-91 (1st Cir. 1997).  If an employer makes only an illusory promise, such as here, there exists no mutual assent, and the lack of consideration means the parties cannot be bound thereby. Restatement (Second) of Contracts § 18.

As articulated in *Snow,* "Defendant, who crafted the language of the booklet, was trying to 'have its cake and eat it too.' Defendant wished to bind its employees to the terms of the booklet, while carving out an escape route that would enable the company to avoid the terms of the booklet if it later realized that the booklet's terms no longer served its interests." *Snow*, 126 F.Supp.2d 5, 15 (D. Me. 2001)."

Note that although Magnolia states in its Arbitration Policy, attached to its Motion as Exhibit 2, that its agreement to pay arbitration costs constitutes additional consideration, this is simply not the case. In fact, in order to compel arbitration, employers in the District of Columbia are *required* to pay arbitration costs, at least with regard to statutory claims such as this one. As such, Magnolia is giving nothing of value here. *See Cole*, 105 F.3d 1465, 1485: "In sum, we hold that [the employee] Cole could not be required to agree to arbitrate his public law

claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses."

Further, although courts in some jurisdictions have held that in certain circumstances continued employment may constitute sufficient consideration, this case does not involve anything more than inconsequential additional period of employment consisting of a suspicious few days, culminating in a (retaliatory) termination during the pendency of Mr. Davis' D.C. Office of Human Rights complaint.  If there was a promise of continued employment – which promise was not made in this case is, like the unilaterally modifiable provision discussed above – was illusory.

## VI. CONCLUSION

For the foregoing reasons, Mr. Davis respectfully requests an order denying the Defendant's Motion to Dismiss and declaring that Plaintiff's Complaint may be litigated in this forum.

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA,
PLLC

/s/ T. Cary Devorsetz
T. Cary Devorsetz (D.C. Bar No. 475070)
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: cdevorsetz@adhlawfirm.com

**COUNSEL FOR PLAINTIFF**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

BLYDEN A. DAVIS                )
               Plaintiff,    )
                       )
        v.               )
                       )
JOSEPH J. MAGNOLIA, INC.  )   Civil Action No. 1:08-CV00290 -EGS
                       )
          Defendant.    )
                       )
                       )
                       )

### AFFIDAVIT OF BLYDEN A. DAVIS

I, Blyden A. Davis, hereby affirm, under penalty of perjury that the following is true and correct:

1. I was hired as an equipment operator, by Joseph J. Magnolia, Inc. ("Magnolia") in the District of Columbia in approximately March 2005.

2. I filed a complaint of hostile work environment based on race and retaliation with the District of Columbia Office of Human Rights ("OHR") on or about January 6, 2006.

3. On or about April 20, 2006, I was called into the trailer on our jobsite at the end of the workday, where I was greeted by a female member of Magnolia's Human Resources Department.

4. The woman from Human Resources, whose name I do not recall, informed me that she had my paycheck in her possession, but that she would not give it to me until I signed a document acknowledging my receipt of a new employee manual.

5.     The Human Resources representative made it clear that unless I signed the document she placed in front of me at that moment, that I would not receive my paycheck.

6.     The paycheck included payment for work I had already performed for Magnolia.

7.     Because I relied on my paycheck and needed to be paid, I immediately complied with the Human Resources representative's insistence that I sign the document she placed in front of me .

8.     I was not given an opportunity to review the new employee handbook at the moment I was told to sign the document placed in front of me.

9.     Although I recall signing a document on or about April 20, 2006 acknowledging my receipt of a new employee manual, I do not recall signing the document contained at Exhibit 1 of Magnolia's motion to dismiss in this case.

10.    The date on which I recall signing an acknowledgment of my receipt of a new employee manual is the only date in 2006 on which I recall signing any documents concerning the receipt of an employee manual.

11.    To the best of my recollection, with the exception of the aforementioned paycheck, all other paychecks were distributed in the mornings, and not at the end of the workday.

12.    Magnolia terminated me on or about May 4, 2006, during the pendency of my OHR complaint processing and one day before the scheduled mediation in my case (to which Magnolia did not show).

13.    On or about May 11, 2006, I supplemented my OHR complaint to include an

additional retaliation claim based on my termination.


Further, Affiant states naught.




Signed this Day, March ⎣21⎦, 2008, by:




_Blyden A. Davis_ (signature)
Blyden A. Davis




Subscribed and sworn to before me, this 21 day of March, 2008

Notary Public _____ (signature)


**WILLIAM PURDUM**
NOTARY PUBLIC
ANNE ARUNDEL COUNTY
MARYLAND
MY COMMISSION EXPIRES OCT. 04, 2011

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BLYDEN A. DAVIS | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH J. MAGNOLIA, INC. | ) | Civil Action No. 1:08-CV00290 -EGS |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## AFFIDAVIT OF T. CARY DEVORSETZ

I, T. Cary Devorsetz, attorney for the Plaintiff in the above captioned matter, hereby affirm, under penalty of perjury, pursuant to Fed. R. Civ. P. 56(f) that the following is true and correct:

1. Neither my client nor I are in possession of an entire copy of the Defendant's employee manual, a portion of which Defendant attached to its Motion to Dismiss in this case.

2. Neither my client nor I has knowledge concerning which portions of the employee manual we do not have in our possession.

3. Neither my client nor I has knowledge concerning version of the employee manual sections we have in our possession (e.g., old or revised).

4. In order to fully determine what additional arguments Plaintiff has, available to him if any, with respect to the binding arbitration language at issue in the attached Opposition, the undersigned must conduct limited discovery.

5.    The limited discovery required by the undersigned would be for the purpose

of identifying additional language in the employee manual that may affect the

enforceability of the arbitration provision at issue in this dispute.


Further, Affiant states naught.


Signed this Day, March 21st, 2008, by:


                                        _____
                                        T. Cary Devorsetz


Subscribed and sworn to before me, this 21st day of March, 2008

Notary Public _____


                    STEVEN SUSHNER
            NOTARY PUBLIC DISTRICT OF COLUMBIA
            My Commission Expires February 14, 2013

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BLYDEN A. DAVIS              )
            Plaintiff,   )
                     )
        v.           )
                     )
JOSEPH J. MAGNOLIA, INC.   )   Civil Action No. 1:08-CV00290 - EGS
                     )
        Defendant.  )
                     )
                     )
                     )

## <u>ORDER</u>

      This matter before the Court on the Plaintiff's opposition to the Defendant's motion to dismiss the Complaint. The Court finds that if an agreement to arbitrate to entered into, such agreement is invalid and unenforceable. The Court, having reviewed the motion and memorandum in support thererof, and opposition to the same, as well as any reply thereto, finds hereby denies Defendant's Motion.

      **IT IS ORDERED** that the Defendant's motion to dismiss is **DENIED**.

Signed on _____, 2008

_____
Judge, United States District Court