UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
BLYDEN A. DAVIS,               )
                               )
            Plaintiff,         )
                               )
    v.                         )   Civ. Action No. 08-290 (EGS)
                               )
JOSEPH J. MAGNOLIA, INC.,      )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM OPINION**

Plaintiff Blyden A. Davis has filed discrimination and retaliation claims against defendant Joseph J. Magnolia, Inc., his former employer, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.* After conducting limited discovery, the parties filed cross-motions for summary judgment on the question of whether they entered a binding agreement to arbitrate plaintiff's claims.  Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, and for the reasons stated herein, the Court **GRANTS** plaintiff's motion for summary judgment on the issue of arbitration and **DENIES** defendant's cross-motion for summary judgment and dismissal pursuant to the Federal Arbitration Act ("FAA").

1

**I.   BACKGROUND**

Plaintiff, an African-American male, was employed as an equipment operator by defendant, a for-profit Maryland corporation headquartered in the District of Columbia.  Compl. ¶¶ 2, 12.  He began his employment with defendant in March 2005 and worked continuously for the company through his termination in May 2006.  Compl. ¶ 12.  Plaintiff alleges that in July 2005, he heard his Caucasian supervisor refer to him as a "Nigger."  Compl. ¶ 13.  On or about October 17, 2005, he complained to defendant's human resources office about the alleged incident and the hostile work environment he believed he was being subjected to based on his race.  Compl. ¶ 14.  Approximately one week later, plaintiff was transferred to work under a different supervisor.  Compl. ¶ 15.

Around January 6, 2006, plaintiff filed a complaint with the District of Columbia Office of Human Rights ("OHR") alleging discrimination and retaliation.  The complaint was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to a work-sharing agreement between those agencies.  Compl. ¶ 5.  Plaintiff alleges that he was reprimanded and issued warnings by defendant for unfounded reasons as a result of the complaints he made to defendant's human resources office and the OHR.  Compl. ¶ 17.  Defendant admits that plaintiff was reprimanded, but maintains that the warnings were performance-related.  Answer at 7.

Around April 20, 2006, plaintiff was summoned at the end of the workday to collect his paycheck and sign a two-page document titled "Receipt and Acknowledgment of The Magnolia Companies Employment Benefits and Guidelines Manual" ("Form").  Mem. P. & A. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") at 2.  The arbitration policy was referenced on the first page of the Form only, and plaintiff claims that he was only shown the second page.  *See* Pl.'s Mem. at 3; Def.'s Mem. Supp. Summ. J. & Dismissal ("Def.'s Mem.") at Ex. 1.  Nevertheless, plaintiff does not dispute that he did sign the Form.  Def.'s Mem. at Ex. 2; Reply Br. Further Supp. Def.'s Mot. Summ. J. & Dismissal ("Def.'s Reply") at 7.

Plaintiff alleges that human resources refused to release his paycheck unless he immediately signed the Form.  Pl.'s Opp'n Def.'s Mot. Dismiss at Ex. 1 ("Davis Aff.") ¶ 5; Pl.'s Mem. at 2.  Defendant's human resources director and manager both state, however, that they did not overhear their assistant, who distributed the paychecks, demand a signature in return for the paycheck and that plaintiff did not approach them to complain about a withheld paycheck.  Def.'s Mem. at Ex. 5 ("Tormo Aff.") ¶ 10; Def.'s Mem. at Ex. 7 ("Woldemichael Aff.") ¶ 10.

Plaintiff contends, and defendant does not dispute, that on all other occasions he received his paycheck at the beginning of the day.  Davis Aff. ¶ 11.  Defendant asserts the late paycheck distribution was timed to coincide with the distribution of the

revised Employee Manual ("Manual") for administrative efficiency. Tormo Aff. ¶ 5; Woldemichael Aff. ¶ 4.  Moreover, defendant asserts that, upon request, employees were given additional time to review the Manual before signing the Form.  Tormo Aff. ¶¶ 6-7; Woldemichael Aff. ¶¶ 5-6.  In support of this assertion, defendant points to evidence of one employee who requested and received additional time.[1]  Tormo Aff. ¶ 8; Woldemichael Aff. ¶ 7.

Around May 4, 2006, two weeks after plaintiff signed the Form, defendant terminated plaintiff's employment.  Davis Aff. ¶ 12.  Plaintiff subsequently supplemented his OHR complaint to include an additional retaliation claim based on his termination.  *Id.* at ¶ 13.  In December 2006, the OHR mailed a Letter of Determination to plaintiff dismissing his claims, and the EEOC adopted the OHR's decision.  Compl. ¶¶ 7, 9.

On February 20, 2008, plaintiff filed a three-count complaint in this Court alleging violations of Title VII and the DCHRA. Defendant filed a motion to dismiss the complaint pursuant to the FAA, which the Court denied on the basis that plaintiff was entitled to some discovery on the issue of whether a binding arbitration agreement exists.  The parties have conducted that

---

[1] Defendant does not indicate whether this employee's paycheck was withheld, but the employee apparently took approximately one month to return the signed Form.  *See* Woldemichael Aff. ¶ 7.

discovery and filed cross-motions for summary judgment.[2]  Those cross-motions are now ripe for decision by this Court.

## II.  LEGAL FRAMEWORK

### A.  The FAA

The FAA provides that

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contractor transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The FAA's purpose was to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  As such, public policy favors arbitration.  *See EEOC*

---

[2] Plaintiff objects to what he describes as defendant's late-filed opposition to plaintiff's motion for summary judgment, and urges the Court to disregard any of the arguments advanced in that filing.  *See* Pl.'s Combined Mem. Opp'n Def.'s Mot. Summ. J. & Reply ("Pl.'s Combined Mem.") at 2 n.1.  In addition, plaintiff points to defendant's failure to file a separate statement of material facts as required by Local Civil Rule 7 and Federal Rule of Civil Procedure 56.1.  The Court recognizes that - contrary to the briefing schedule put in place by the Court, which required defendant to submit a combined cross-motion and opposition to plaintiff's motion - defendant filed its opposition and cross-motion separately.  Because defendant's opposition was filed through the electronic case filing system only ten minutes after midnight on the date its filing was due, the Court will overlook this delay.  The Court will also reluctantly excuse defendant's noncompliance with the briefing schedule ordered by the Court and its failure to attach a separate statement of material facts in dispute.  Defendant is cautioned, however, that future failures to comply with the rules and orders of this Court will not be tolerated.

*v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Employment contracts, moreover, are covered under the FAA.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  The FAA, however, "does not operate without regard to the wishes of the contracting parties."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).  To the contrary, because "[a]rbitration under the Act is a matter of consent, not coercion," it is well-established that "the FAA does not require parties to arbitrate when they have not agreed to do so."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478-79 (1989).

### B.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to

judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975).

**III. DISCUSSION**

The parties agree that Title VII claims are a legitimate matter for arbitration, but dispute whether a valid agreement to arbitrate exists between them and whether the existence of such an agreement is more appropriately ascertained by a court or arbitrator. In order to resolve these questions, the Court must address whether (1) a judicial or arbitral forum is appropriate for resolving the present dispute, (2) the agreement should apply retroactively to claims plaintiff raised with the OHR before he signed the Form, and (3) there was consideration for the agreement to arbitrate.[3]

    **A. The Proper Forum**

As a preliminary matter, defendant argues that an arbitrator, not this Court, must resolve plaintiff's claim that there is no enforceable arbitration agreement. Defendant cites *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006), for the proposition that when a party challenges the validity of the entire contract, rather than an arbitration provision specifically, that challenge must be heard by an arbitrator. *See*

---

[3] Plaintiff also argues that the agreement was either unconscionable or the result of economic duress. But because the Court concludes that the arbitration provision is unenforceable for other reasons, it declines to address this issue.

Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") at 6.  In *Buckeye*, the petitioner asserted that a contract, signed on each occasion that he had cashed a check with respondent and which included an arbitration provision, was illegal because of usurious charges.  546 U.S. at 442-43.  Relying on earlier cases addressing the body of federal substantive law governing arbitration, the Court held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."  *Id.* at 449; *see also Qwest Commc'ns Corp. v. Ansari*, No. 05-1836, 2007 WL 172318, at *3 (D.D.C. Jan. 23, 2007) (holding that arbitration was required where the contract as a whole, not the arbitration clause, was questioned).

Plaintiff distinguishes *Buckeye* and *Qwest* by arguing that he is challenging both the Form and Manual as a whole *and* the specific language of the arbitration policy.  Pl.'s Combined Mem. Opp'n Def.'s Mot. Summ. J. & Reply ("Pl.'s Combined Mem.") at 7.  Furthermore, plaintiff asserts that defendant "ignores the hundreds, if not thousands, of federal cases in this circuit and others, which decide whether a dispute must be arbitrated."  Pl.'s Combined Mem. at 7; *see, e.g.*, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." (citation omitted)); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938,

8

944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (alterations in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)))); *AT&T Techs.*, 475 U.S. at 649 (explaining, in the context of a collective bargaining agreement, that "the question of arbitrability . . . is undeniably an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *Nur v. K.F.C., USA, Inc.*, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001) (noting that before ruling on a motion to dismiss, the court had to determine whether parties entered into a binding arbitration agreement).

The cases cited above demonstrate that disagreements between parties over whether they intended particular issues to be arbitrated – and whether they are bound by an arbitration clause at all – are questions for judicial determination.  This Court, not an arbitrator, must resolve whether there was a meeting of the minds with respect to arbitration of plaintiff's discrimination claims.

### B.  Retroactive Application of the Arbitration Policy

Plaintiff contends that he should not be obligated to arbitrate the hostile work environment claim he filed with the OHR

before he signed the Form.  Pl.'s Mem. at 9.  Relying on *Bailey v. Federal National Mortgage Association*, 209 F.3d 740, 744 (D.C. Cir. 2000), plaintiff maintains that he "clearly signal[ed]" his rejection of arbitration and put defendant "on notice" of his preference for a judicial forum.  Pl.'s Mem. at 9 (quoting *Bailey*, 209 F.3d at 744-45); *see* 209 F.3d at 744 (affirming the district court's factual finding that the parties never contractually agreed to arbitrate where the employee filed his claims with the EEOC before the execution of the arbitration agreement).  Moreover, plaintiff argues that it would be inequitable to expect him to have understood that the Form would impact his rights related to a pending matter.  *Id.* at 10.

Defendant does not directly address the reasonableness of applying the arbitration policy retroactively, nor does it respond to plaintiff's claim that the decision to file his complaint with the OHR constituted a rejection of defendant's contract terms. Defendant does, however, distinguish *Bailey* by pointing out that the employee in that case, in contrast to plaintiff, never executed a written agreement with his employer to arbitrate. Def.'s Reply at 5; *see Bailey*, 209 F.3d at 745.

Under District of Columbia law, "the party asserting the existence of the contract has the burden of proving its existence" by showing that there was a meeting of the minds as to all material respects.  *Shelton v. Ritz Carlton Hotel Co.*, 550 F.

Supp. 2d 74, 79 (D.D.C. 2008) (citing *Bailey*, 209 F.3d at 746). Neither party cited the recent decision in *Shelton*, but this Court nevertheless finds its reasoning persuasive as applied to the present facts. In *Shelton*, the court considered whether an arbitration clause in an employment agreement signed in June 2005 applied to a discrimination claim arising out of an incident that occurred the previous month. *Id.* at 79-80. The *Shelton* court viewed with skepticism the employer's attempt to apply the arbitration clause retroactively, finding no language in the employment agreement that indicated intent to enforce the arbitration clause in this manner. *Id.* As a result, the court held that arbitration was enforceable only with respect to claims arising after the execution of the agreement. *Id.*

As in *Shelton*, neither the Manual nor the Form contain any language expressing an intent to apply the arbitration policy to past claims. Likewise, plaintiff's initial discrimination claim, though not his retaliatory termination claim, preceded the execution of the revised Manual containing the new arbitration policy. The alleged incidents that gave rise to the parties' dispute in this case, moreover, are what prompted plaintiff to file a claim with the OHR four months before he signed the Form. As such, the principle against retroactive application articulated in *Shelton* applies with even greater force in the present case.

Defendant cites no case in support of the proposition that the arbitration agreement should be applied retroactively, and the legal principles discussed above support the contrary proposition. *See, e.g.*, *First Options*, 514 U.S. at 945 (affirming "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration"); *Shelton*, 550 F. Supp. 2d at 79-80.  For these reasons, this Court concludes that the arbitration clause is unenforceable as to plaintiff's claims that arose prior to the signing of the Form on April 20, 2006.  As the next section demonstrates, however, the arbitration provision is unenforceable as claims that were filed after that date as well.

### C.  Consideration

Plaintiff argues that he is not required to arbitrate any of the claims raised in his complaint because the Form and Manual contain conflicting language that renders defendant's promise to arbitrate illusory and the arbitration provision void for lack of consideration.  Pl.'s Mem. at 4-7; Pl.'s Combined Mem. at 5-6.  Defendant, however, responds that its mutual agreement to arbitrate, pay all costs, and comply with the arbitration policy constitutes sufficient consideration to support the agreement.[4]

---

[4] Only defendant's final argument merits any extended discussion. First, the Court rejects defendant's contention that plaintiff has not responded to, and thus has conceded, the argument that defendant's promise to participate in arbitration and abide by its arbitration policy provided consideration.  *See* Def.'s Reply at 1.  Plaintiff devotes significant space to arguing that this promise to arbitrate was illusory, and defendant's assertion that the argument is conceded is therefore wholly without merit.  The Court

Def.'s Mem. at 3; Def.'s Reply at 3-4.  The Court agrees with plaintiff.

A contract lacks consideration when one party's promise is illusory, and a promise is illusory when performance of that promise is optional.  *See* Restatement (Second) of Contracts § 77 (1981).  Defendant notes that mutual agreements to arbitrate are not illusory; rather, they are "independently sufficient forms of consideration."  *Sapiro v. Verisign*, 310 F. Supp. 2d 208, 214 (D.D.C. 2004) (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667 (6th Cir. 2003)).  The essential question here is whether the language of defendant's Form and Manual created a mutual agreement or permitted optional performance by defendant.

The Form signed by plaintiff explicitly states under the heading "Arbitration," that "I understand that Magnolia and I entered into an agreement to abide by this policy."  Def.'s Mem. at Ex. 1.  Additionally, the Manual provides:

---

also rejects defendant's position – articulated in both its Manual and its briefing on the pending motions – that its commitment to pay all costs of arbitration supplies consideration for the arbitration policy.  Plaintiff argued in his opening brief that defendant was already obligated by law to pay all costs of arbitration, a point that defendant did not rebut.  Indeed, the D.C. Circuit has made clear that as a matter of law, defendant was under a pre-existing duty to pay the costs of arbitration.  *See Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1483-84 (D.C. Cir. 1997) (holding that an employer cannot require an employee to pay all or part of an arbitrator's fees through an arbitration provision).  Complying with this legal obligation does not supply consideration.  Finally, the Court emphasizes that defendant does *not* contend that plaintiff's employment, which was terminated two weeks after he acknowledged receipt of the Manual, served as consideration for the agreement to arbitrate.  Accordingly, the only question before the Court is whether defendant's alleged promise to be bound by the arbitration constitutes consideration to support the agreement.

13

> "Magnolia reciprocally and in consideration of same will initiate or participate in arbitration . . . ."

\* \* \* \*

> "Magnolia has agreed . . . to be bound by the arbitration procedure set forth in this Arbitration Policy."

\* \* \* \*

> "Unlike the other policies and procedures in this Employee Handbook, this Arbitration Policy is a legal agreement."

\* \* \* \*

> "Except for the Arbitration Policy, the statements and language in this Employee Handbook are not intended to create . . . a contract between the company and any of its employees."

Def.'s Mem. at Exs. 3-4.

Defendant argues that because the disclaimers clearly exclude the arbitration policy and defendant cannot unilaterally change or cancel its arbitration policy, as a matter of law, the agreement to arbitrate is not illusory. Def.'s Opp'n at 5-6; Def.'s Reply at 1-2. Plaintiff, in turn, contends that defendant's disclaimers in the Form and Manual constitute an "escape route" by which defendant's agreement to abide by its arbitration policy is rendered illusory. Pl.'s Mem. at 5; Pl.'s Combined Mem. at 3. In particular, plaintiff points to two provisions:

> "I understand that the policies and benefits described in it are subject to change at the sole discretion of Magnolia at any time."

\* \* \* \*

14

> "[T]he policies contained in this employee
> handbook . . . are [not] intended to create a contract
> of employment or a warranty of benefits.  In addition,
> circumstances will obviously require that policies,
> practices, and benefits described in this handbook
> periodically change. As such changes occur, updated
> pages of this Employee Handbook will be distributed to
> you."

Def.'s Mem. at Exs. 1, 3.

Plaintiff cites numerous cases from other circuits holding that a disclaimer in an employee manual renders an arbitration provision unenforceable, but defendant effectively distinguishes most of those cases on the facts. *Compare* Pl.'s Mem. at 4-8, *with* Def.'s Reply at 4-6.  The case most analogous to the present one is *Diaz v. Arapahoe (Burt) Ford, Inc.*, 68 F. Supp. 2d 1193, 1193-94 (D. Colo. 1999).  In *Diaz*, an employer sought to enforce an arbitration provision in its employee manual based on the employee's signature on an "acknowledgment and receipt" form.  *See id.* at 1193.  The arbitration provision included a sentence that it "*does not constitute an employment agreement . . . and does not make any other provision of the Employee Manual contractual or otherwise legally enforceable*."  *Id.* at 1194 (alteration and emphasis in original).  The court concluded that the "disclaimer in the handbook that nothing other than the arbitration provision is 'legally enforceable' [was] fatal to the defendant's position," because an employer should not have the power to select which representations in its manual an employee's "acknowledgment and receipt" will make binding.  *Id.*

15

Defendant relies on *Lumuenemo v. Citigroup, Inc.*, No. 08-830, 2009 WL 371901, at *1 (D. Colo. Feb. 12, 2009), in which another judge on the same court rejected the *Diaz* court's reasoning. *Id.* at *2. In *Lumuenemo*, the court held that an employer *could* include in an employee manual a subset of policies not subject to unilateral revocation or modification that would be enforceable. *See id.* at *3-4. Citing Tenth Circuit caselaw, the *Lumuenemo* court acknowledged that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope would render that agreement illusory. *Id.* at *4-5. The court reasoned, however, that an arbitration agreement permitting the drafting party to modify the agreement only under certain restrictions might not be illusory. *Id.* Importantly, in *Lumuenemo*, the court held that the arbitration agreement in that case was not illusory because of the employer's self-imposed restrictions incorporated into the contract: a thirty-day notice period before the arbitration provision would take effect and the explicit commitment that the arbitration provision applied prospectively only. *See id.*

Defendant's reliance on *Lumuenemo*, therefore, is misplaced. Defendant asserts that its disclaimers clearly indicate that defendant is bound by the arbitration policy. But unlike the employer in *Lumuenemo*, it is far from clear that defendant lacks the power under the terms of the Form and Manual to alter its

16

arbitration policy.  To the contrary, the Manual states that policies therein may "periodically change," and that those changes may occur "at the sole discretion of Magnolia."  Def.'s Mem. at Exs. 1, 3.  The Manual also provides no mention of a notice period or other safeguards that in other cases have allowed disclaimers to exist without rendering the agreement illusory.  *See Lumuenemo*, 2009 WL 371901, at *5 (citing cases).

For these reasons, the Court concludes that conflicting language in the Manual makes defendant's performance optional.  *Cf. Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1468 (D.C. Cir. 1997) (explaining that close questions in the interpretation of contract provisions are to be resolved against the drafter).  And because no other form of consideration supports the agreement to arbitrate, the purported agreement to arbitrate is unenforceable for lack of consideration.

**IV. CONCLUSION**

For the reasons set forth above, plaintiff's motion for summary judgment is **GRANTED**.  Defendant's motion for summary judgment and dismissal pursuant to the FAA is **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **July 31, 2009**